**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: GENENTECH HERCEPTIN (TRASTUZUMAB) MARKETING AND SALES PRACTICES LITIGATION | MDL No. 2700 |

**DEFENDANT GENENTECH, INC.'S RESPONSE IN OPPOSITION**
**TO PLAINTIFFS' MOTION FOR TRANSFER**

Defendant Genentech, Inc. ("Genentech") respectfully submits its Response in Opposition to Plaintiffs' Motion for Transfer of Actions to the Northern District of Oklahoma Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings (Dkt. #1) ("Motion").

**I.     INTRODUCTION**

The creation of an MDL will not promote the just and efficient conduct of these nine actions nor serve the convenience of the parties and witnesses.  All plaintiffs are represented by the same counsel.  Plaintiffs move for an MDL less than a month after the district judge presiding over their original action dismissed several of these same plaintiffs for lack of personal jurisdiction.  Plaintiffs now seek to make an end-run around that dismissal order by asking this Panel to re-assign their claims *to that same district judge* under the guise of an MDL so that they may pursue these claims together and in the most convenient location for Plaintiffs' counsel, but not for the vast majority of the parties or witnesses.  This Panel has rejected similar attempts to use Section 1407 to bypass unfavorable jurisdictional rulings, and it should do so again.  Moreover, creation of an MDL is unnecessary because the parties can achieve the same efficiencies across this small number of cases through coordinating discovery and other pretrial

proceedings informally because each side is represented by a single law firm, whose counsel already have a close working relationship.

Centralization also is not appropriate because discovery in these actions will revolve around highly particularized questions concerning each plaintiff's individual conduct and interactions with Genentech and various distributors; thus, there are not sufficient common questions of fact to warrant an MDL.  Nor are the few common questions of fact that do exist— which will turn on Genentech's documents and witnesses—of a sufficient complexity or number to justify an MDL, especially where so few counsel are involved and coordination already exists.

Under these circumstances, Genentech strongly opposes centralization, but if the Panel deems it necessary, the Northern District of Oklahoma is not an appropriate forum because (i) discovery remains in its infancy and the district court has not developed any special knowledge; (ii) most Plaintiffs and Genentech reside outside Oklahoma, as do their documents and witnesses; (iii) Tulsa, Oklahoma is not readily accessible to most parties and witnesses; and (iv) the Northern District of Oklahoma has limited MDL experience.  If the Panel orders transfer, it should centralize these actions in the Northern District of California, where most of Genentech's documents and witnesses are located, all parties can travel to easily, and the district court has extensive MDL experience.

II.     BACKGROUND

        A.     The Parties and Claims.

The Plaintiffs in these actions are medical providers running cancer treatment clinics.  All twelve plaintiffs are represented by one law firm, GableGotwals, located in Tulsa, Oklahoma.  Plaintiffs' claims arise out of their alleged purchase and use of Herceptin® (trastuzumab) (herein, "Herceptin"), a prescription medication manufactured and distributed by Defendant

Genentech.[1]  Herceptin is an FDA-approved prescription medication for the treatment of certain types of metastatic breast cancer and early breast cancer that overexpress a protein called HER2, which causes breast cancer to grow and spread faster.  Herceptin targets this protein and is a highly effective treatment for women with this type of breast cancer.

Plaintiffs do not allege that Herceptin caused any personal injuries in these cases, that the Herceptin provided was ineffective, or that Genentech deceived them into purchasing the medicine.  Instead, Plaintiffs allege claims for breach of express warranty, breach of implied warranty, and unjust enrichment, all predicated on Plaintiffs' alleged inability to extract every drop of the medicine from each vial after it is mixed with fluid to form an injectable solution.

Though they share the same counsel, Plaintiffs operate their businesses separately.  Each Plaintiff maintains separate facilities, employs separate staff, and likely follows its own, unique procedures in purchasing, handling, and using Herceptin.  Each clinic also engages in its own distinct course of business in relation to Genentech and various Herceptin distributors.  Based on their Complaints, Plaintiffs maintain vast networks of facilities and staff, including hundreds of doctors, nurses, and other office personnel spread across many different locations around the United States.  *See, e.g.*, Compl. of Florida Cancer Specialists, P.L., ¶ 17 (plaintiff "is the largest independent medical oncology/hematology practice in the United States with over 170 physicians, 110 nurse practitioners and physician assistants in over 80 locations") (attached as Ex. 4 to Pls.' Mot.); Compl. of Tennessee Oncology, PLLC ¶ 17 (plaintiff's "medical

---

[1]  In their Motion for Transfer, Plaintiffs incorrectly titled this proceeding by not using the full corporate name of defendant "Genentech, Inc."  While no MDL is appropriate for the reasons explained herein, if one is created, its name should identify the defendant as "Genentech, Inc."

professional staff includes over 80 board certified [] physicians," delivering care at "over 30 locations throughout the Mid-state and Southeast regions.") (attached as Ex. 9 to Pls.' Mot.).[2]

**B.    The District Court Dismissed Numerous Plaintiffs for Lack of Personal Jurisdiction.**

On April 2, 2015, two of the current Plaintiffs—Tulsa Cancer Institute, PLLC and Oklahoma Oncology and Hematology, Inc.—filed a Complaint in the Northern District of Oklahoma.  The case was assigned to District Judge Terence C. Kern.  On July 7, 2015, facing a pending motion to dismiss, Plaintiffs filed a motion for leave to amend, seeking, *inter alia*, to add seven new plaintiffs, including six out-of-state plaintiffs.  Genentech opposed the motion, arguing in part that the Court lacked personal jurisdiction over the out-of-state Plaintiffs' claims. Although Judge Kern initially denied Genentech's motion, he subsequently granted a Motion for Reconsideration and dismissed the non-resident Plaintiffs' claims for lack of personal jurisdiction.  *See* Opinion and Order (Jan. 12, 2016) (attached as Ex. A); Mot. for Reconsideration (attached as Ex. B).

In doing so, Judge Kern found that "Plaintiffs have alleged no facts which support a finding of specific jurisdiction over [Genentech] with regard to the non-resident Plaintiffs' claims," concluding that "[u]nder Plaintiffs' proposed theory of personal jurisdiction, Defendant could be subjected to suit by any Herceptin purchaser in Oklahoma; the law simply does not support such an extension of specific jurisdiction."  *Id.* at 7.  Judge Kern also ordered Plaintiffs "to seek leave from the Court before adding any additional parties in the future."  *Id.* at 9.

---

[2]  *See also* Compl. of Minnesota Oncology Hematology, P.A. ¶ 17 (attached as Ex. 5 to Pls.' Mot.); Compl. of Hematology-Oncology Associates of Central New York, P.C. ¶ 17 (attached as Ex. 7 to Pls.' Mot.); Compl. of Texas Oncology, P.A. ¶ 23 (attached as Ex. 8 to Pls.' Mot.); Compl. of Cancer Care Network of South Texas, P.A. ¶ 17 (attached as Ex. 10 to Pls.' Mot.); Compl. of Virginia Oncology Associates, P.C. ¶ 15 (attached as Ex. 11 to Pls.' Mot.).

### C.     Immediately After Dismissal, Plaintiffs Re-Filed and Sought an MDL.

Following dismissal of their claims in the Northern District of Oklahoma, Plaintiffs immediately re-filed in their respective home jurisdictions, with Complaints alleging essentially identical allegations to each other.  *See* Exs. 4 – 12 to Pls.' Mot. for Transfer; *cf.*, Ex. 4 ¶¶ 18-40 *with* Ex. 5 ¶¶ 18-40 *with* Ex. 6 ¶¶ 18-40.  Within 72 hours of re-filing their separate Complaints, Plaintiffs filed their Motion for Transfer before this Panel.  *See* Pls.' Mot. for Transfer (Dkt. #1). Plaintiffs' Motion seeks to create a centralized, multidistrict litigation in the same jurisdiction and before the same judge—Judge Kern—from which they just were dismissed for lack of personal jurisdiction.  Plaintiffs have not served any of their re-filed Complaints on Genentech.

## III.    ARGUMENT

Section 1407 authorizes the transfer of two or more civil actions, pending in different districts only when all of the following requirements are met: (1) the actions involve "one or more common questions of fact"; (2) transfer "will promote the just and efficient conduct of such actions"; and (3) transfer "will be for the convenience of parties and witnesses."  28 U.S.C. § 1407(a).  Because these actions do not satisfy these requirements, transfer is not warranted.

### A.     Transfer Will Not Promote the Just and Efficient Conduct of These Actions or Serve the Convenience of the Parties and Witnesses.

#### 1.     This Motion Is an Attempt to Bypass the District Court's Order Dismissing These Plaintiffs for Lack of Personal Jurisdiction.

Plaintiffs' motion to transfer these actions back to the Northern District of Oklahoma is an improper attempt to bypass Judge Kern's Order dismissing their claims for lack of personal jurisdiction.  Plaintiffs seek to use the MDL statute to obtain what Judge Kern denied when he held they were required to pursue their disparate claims against Genentech in their respective home jurisdictions, instead of as a single action in their counsel's home jurisdiction.

In their Motion for Transfer, Plaintiffs repeatedly cite the fact that there are twelve different Plaintiffs and take pains to present them as separate actors.[3]   The Motion fails to mention, however, that all Plaintiffs are represented by the same law firm based in Tulsa, Oklahoma.   These same attorneys have directed this litigation since filing the original action in April 2015.   Plaintiffs first attempted to file all of their separate claims in a single action in the Northern District of Oklahoma.   During the pendency of that action, Plaintiffs never requested that they be consolidated into an MDL but instead insisted that they were entitled to pursue their claims in a single action before Judge Kern.   In dismissing the non-resident plaintiffs for lack of personal jurisdiction, Judge Kern concluded that not doing so would leave Genentech "subjected to suit by any Herceptin purchaser in Oklahoma," regardless of where their actual purchase, use, or other critical facts had occurred.   Ex. A at 7.   The situation is little different before this Panel. In effect, Plaintiffs ask the Panel to create a mass-tort litigation where none should exist.

Moreover, Plaintiffs do not explain how the eight Plaintiffs not residing in or otherwise connected to Oklahoma will benefit from centralization there.   Those Plaintiffs are located in such remote locations from Tulsa, Oklahoma, as upstate New York, Virginia, and south Florida. Their documents and witnesses are not in Oklahoma.   As Judge Kern held, these Plaintiffs lack even constitutionally minimum contacts with that state.   The truth is that centralization will not benefit the parties or their witnesses, but rather Plaintiffs' counsel, who will be able to pursue these nine actions together in a single proceeding at their local federal courthouse, located less than half a mile from counsel's office.[4]   *See* Google Maps, http://www.maps.google.com (last visited Feb. 25, 2016).

---

[3]   *See, e.g.*, Mot. for Transfer at 3 ("All twelve plaintiffs join together in this Motion"); *id.* at 9 (citing "vast majority of the parties"; referring to the "geographically disparate 12 plaintiffs").
[4]   In briefing before Judge Kern over Plaintiffs' improperly joined claims, Genentech referenced the MDL process, noting that it represented the standard method for parties to join multiple

The Panel has consistently rejected as improper attempts to use Section 1407 to bypass unfavorable jurisdictional rulings. *See, e.g.*, *In re: Klein*, 923 F. Supp. 2d 1373, 1374 (J.P.M.L. 2013) (***denying centralization where plaintiff acted "for the sole (and, in our view, improper) purpose of effecting the creation of an MDL in the District of District of Columbia, and thus circumventing a possible unfavorable decision on a motion to dismiss for lack of personal jurisdiction"*** (emphasis added); *In re Truck Accident Near Alamagordo, New Mexico, on June 18, 1969*, 387 F. Supp. 732, 733 (J.P.M.L. 1975) (where plaintiffs sought MDL only after having claims in Oklahoma dismissed for lack of personal jurisdiction, declining to centralize in Oklahoma because ***"we suspect that plaintiffs' dominant reason for seeking transfer of the Texas actions under Section 1407 is to accomplish, at least for pretrial purposes, what is not otherwise possible in the Oklahoma federal courts because of lack of in personam jurisdiction over defendant"*** and concluding that ***plaintiffs' "ulterior motive for seeking transfer amounts to an attempted misuse of the statute"*** (emphasis added)); *In re Highway Accident Near Rockville, Conn., on Dec. 30, 1972*, 388 F. Supp. 574, 576 (J.P.M.L. 1975) (***denying plaintiff's MDL motion where it appeared "not motivated by a desire to achieve the purposes for which Section 1407 was designed, but rather, by a desire to circumvent obstacles of personal jurisdiction which necessitated her institution of two separate actions"*** (emphasis added)); *see also In re CVS Caremark Corp. Wage and Hour Employment Pracs. Litig.*, 684 F. Supp. 2d 1377, 1379 (J.P.M.L. 2010) ("[W]here a Section 1407 motion appears intended to further the

---

claims in a single jurisdiction because it imposes "statutorily mandated procedures, which balance efficiency with fairness and due process concerns." *See* Mot. for Reconsideration, Ex. B at 14-15.  However, Genentech did not suggest that Plaintiffs should now be entitled to centralize these actions in an MDL.  ***First***, the record is beyond dispute.  Plaintiffs ignored the MDL process until they had failed to convince Judge Kern to let them bring their separate claims in a single Oklahoma action, only then did they resort to the Panel as an end-run around Judge Kern's dismissal order.  Such conduct violates the principles of fairness and efficiency underlying Section 1407.  ***Second***, for the reasons set forth below, Plaintiffs do not meet the enumerated requirements of Section 1407 and therefore an MDL is inappropriate here.

interests of particular counsel more than those of the statute, we would certainly find less favor with it.").

### 2.    The Number of Actions Is Small and Will Remain Small.

Centralizing these actions will not promote their just and efficient conduct because there are only nine actions involving twelve plaintiffs, all represented by the same law firm.  Plaintiffs do not even suggest, much less prove, that additional actions will be filed in the future.[5]  "Where only a minimal number of actions are involved, the proponent of centralization bears a heavier burden to demonstrate that centralization is appropriate."  *See In re Caribbean Cruise Line, Inc., Telephone Consumer Protection Act (TCPA) Litig.*, 89 F. Supp. 3d 1356, 1357 (J.P.M.L. 2015).

Here, Plaintiffs cannot demonstrate that centralization will improve the conduct of these actions in any meaningful way.  None involves class-wide claims or seeks to certify a class.  Eight of the nine actions involve a single plaintiff suing a single defendant, Genentech, and the other merely involves four plaintiffs suing Genentech.  The Panel routinely denies centralization where too few actions exist to justify creation of an MDL.  *See, e.g.*, *In re: SFPP, L.P., R.R. Prop. Rights Litig.*, 2015 WL 4879677, at *1 (J.P.M.L. Aug. 10, 2015) (denying centralization of litigation involving a total of fifteen actions where informal coordination was practicable "[g]iven the few involved counsel and limited number of actions"); *In re: Plavix Prods. Liab. Litig.*, 829 F. Supp. 2d 1378, 1378 (J.P.M.L. 2011) (declining to centralize twelve actions against pharmaceutical defendants in part because of "limited number of actions" involved); *see also In re Uber Technologies, Inc., Wage and Hour Employment Pracs. Litig.*, 2016 WL 439976, at *1 (J.P.M.L. Feb. 3, 2016) (denying transfer of "seven actions pending in seven districts").

---

[5]   Even if Plaintiffs did contend that future actions may be filed, such speculation would not support transfer.  The mere "allu[sion] to the prospect of additional actions . . . not now before the Panel" is not a "persuasive reason for transfer." *In re Zimmer, Inc. Centralign Hip Prosthesis Prods. Liab. Litig. (No. II)*, 366 F. Supp. 2d 1384, 1385 (J.P.M.L. 2005).

### 3.    Suitable Alternatives to Transfer Are Available in These Cases.

Section 1407 transfer is not appropriate when alternatives to centralization exist.  "If conventional case handling practices in the districts in which the actions are filed would be adequate for management of the litigation, it may be said that an alternative to transfer exists." *Multidistrict Litigation Manual* § 5.33 (2015).  Such practices include informal coordination of discovery and pretrial proceedings by involved counsel.  *See In re Crest Sensitivity Treatment & Protection Toothpaste Mktg. & Sales Pracs. Litig.*, 867 F. Supp. 2d 1348, 1348 (J.P.M.L. 2012). When such preferable alternatives to transfer exist, Section 1407 transfer will not "serve the convenience of the parties and witnesses or promote the just and efficient conduct of the actions."  *See Multidistrict Litigation Manual* § 5.33 (2015) (*citing* 28.U.S.C. § 1407(a)).

Contrary to Plaintiffs' suggestion that coordination or consolidation is necessary to prevent duplication of discovery and inconsistent pretrial rulings, Pls.' Br. at 4-5, here, alternatives, including informal coordination, are more than adequate.  Indeed, centralization will not improve coordination over discovery and other pretrial activities.  All twelve Plaintiffs are represented by the same counsel.[6]  Genentech also is represented by the same counsel in each of the actions.  In the ten months since Plaintiffs filed their original action, counsel for both sides have established a productive working relationship.[7]  Plaintiffs do not identify any current or future impediments to ongoing cooperation among counsel.  There is no meaningful risk of

---

[6]  Plaintiffs cannot reasonably contend otherwise.  ***First***, their counsel—GableGotwals—brings this Motion as the only listed counsel on behalf of all twelve Plaintiffs.  ***Second***, GableGotwals previously represented these same twelve Plaintiffs in conjunction with the original Oklahoma proceeding.  ***Third***, though several complaints for non-Oklahoma plaintiffs list other counsel (apparently as "local counsel"), all nine pending complaints also identify GableGotwals as plaintiffs' counsel.  ***Fourth***, as noted, GableGotwals has conducted this litigation from its outset, and there is no suggestion in the Motion that the Firm intends to cede control over it to others.

[7]  To name just a few examples, counsel have (i) prepared and filed joint status reports to the district court, (ii) negotiated over a protective order, (iii) cooperated in serving and responding to written discovery requests, and (iv) engaged in meet-and-confer conferences regarding dispositive and other motions practice.

duplicative or overlapping discovery, since each side's common counsel can monitor and harmonize discovery across these actions.  *See In re: Rite Aid Corp. Wage and Hour Employment Pracs. Litig.*, 655 F. Supp. 2d 1376, 1377 (J.P.M.L. 2009) (denying centralization and noting "[c]ooperation among counsel and the parties is particularly appropriate here, where plaintiffs in four of the six actions encompassed by the motion share counsel.").  Centralization will not enhance the existing relationships and informal cooperation that have served the parties well to date, particularly in light of the small number of cases.

Under similar circumstances, the Panel has endorsed many methods for counsel to coordinate without marshaling the substantial resources and time of an MDL proceeding.  "For example, notices for a particular deposition could be filed in all actions, thereby making the deposition applicable in each action; the parties could seek to agree upon a stipulation that any discovery relevant to more than one action may be used in all actions; and any party could seek orders . . . directing the parties to coordinate their pretrial efforts; and either party may request from the appropriate district courts that discovery completed in any action . . . be made applicable to those actions."  *In re Sears, Roebuck & Co. Employment Pracs. Litig.*, 487 F. Supp. 1362, 1364 (J.P.M.L. 1980) (denying motion to transfer five actions because suitable alternatives available); *In re Crest*, 867 F. Supp. 2d at 1348 (describing "[v]arious mechanisms . . . available to minimize or eliminate the possibility of duplicative discovery even without an MDL"); *In re Truck Accident*, 387 F. Supp. at 733 (same and recognizing that such methods provided "suitable alternatives" to centralization where "plaintiffs' dominant reason for seeking transfer" was "misuse of the statute" to bypass unfavorable personal jurisdiction ruling).

"The Panel has often stated that centralization under Section 1407 'should be the last solution after considered review of all other options,'" including "coordination among the parties

and the various transferor courts." *In re: Gerber Probiotic Prods. Mktg. and Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012) (internal citation omitted). And the Panel regularly denies transfer when, as here, (i) plaintiffs are represented by common counsel, (ii) counsel have a good working relationship, and (iii) informal cooperation among the involved attorneys and coordination among the involved courts is possible. *See, e.g.*, *In re Townsend Farms Organic Anti-Oxidant Blend Prods. Liab. Litig.*, 24 F. Supp. 3d 1372, 1372-73 (J.P.M.L. 2014); *In re Caribbean*, 89 F. Supp. 3d at 1357 ("Given the few involved counsel and limited number of actions, informal cooperation . . . is both practicable and preferable to centralization.").[8]

**B.    The Factual Disputes in These Cases Are Not Sufficiently Common or "Complex and Numerous" to Warrant Centralization.**

Centralization is inappropriate for two additional reasons:  First, discovery will revolve around highly individualized questions of fact, not common questions.  Second, the few common questions of fact presented are not sufficiently complex and numerous to warrant transfer here.

**1.    Individual Questions of Fact Will Dominate Discovery.**

There is not a sufficient number of common factual questions shared among these actions to warrant MDL treatment. *See In re General Mills, Inc. Yoplus Yogurt Prods. Mktg. & Sales Pracs. Litig.*, 716 F. Supp. 2d 1371, 1372 (J.P.M.L. 2010).  While Plaintiffs contend that a "substantial commonality" of factual questions exists among their separate claims, Pls.' Br. at 5, in reality, these actions will demand highly individualized discovery concerning each Plaintiff. The gravamen of Plaintiffs' various theories against Genentech seems to be that it failed to

---

[8]   *See also In re DirectTV, Inc. Fair Labor Standards Act (FLSA) Wage and Hour Litig.*, 84 F. Supp. 3d 1373, 1375 (J.P.M.L. 2015); *In re: Louisiana-Pacific Corp. Trimboard Siding Mktg., Sales Pracs. and Prods. Liab. Litig.*, 867 F. Supp. 2d 1346, 1347 (J.P.M.L. 2012) (denying transfer, citing concerns over counsel's intent, and concluding that "[g]iven this overlap [in counsel] and the limited number of actions, we believe that informal cooperation is practicable and will avoid duplicative proceedings."); *In re Trilegiant Membership Prog. Mktg. & Sales Pracs. Litig.*, 828 F. Supp. 2d 1362, 1363 (J.P.M.L. 2011); *In re Best Buy Co. Price Match Mktg., Sales Pracs. and Prod. Liab. Litig.*, 672 F. Supp. 2d 1375, 1376 (J.P.M.L. 2010).

supply them with the amount of Herceptin promised such that, after Plaintiffs reconstituted the Herceptin from powder form to liquid by their actions in their facilities, they allegedly did not obtain the amount, concentration, and/or volume of the medication they expected. *See id.* at 3.

Critical factual disputes will turn on the unique actions and procedures of each Plaintiff.[9] Plaintiffs admit in their Complaints that they operate hundreds of facilities across the country, employing hundreds, if not thousands, of individual staff members. For example, Plaintiff Florida Cancer Specialists alleges that it "is the largest independent medical oncology/hematology practice in the United States with over 170 physicians, 110 nurse practitioners and physician assistants in over 80 locations in its network." *See* Ex. 4 to Pls.' Mot. ¶ 17. The other Plaintiffs allege similarly extensive operations. *See supra note* 2*; In re CVS*, 684 F. Supp. 2d at 1379 (declining to centralize seven cases where "discovery in each action is likely to involve individualized, location-specific examination of things" and "the potential for significant individual discovery tilts the balance against centralization"); *In re DirectTV*, 84 F. Supp. 3d at 1375 ("Denying centralization will keep the actions pending in the state where plaintiffs worked and where, presumably, relevant witnesses and documents may be found.").

Individualized issues also will guide discovery into each Plaintiffs' unique course of dealings with Genentech (if any) and their individual purchases of Herceptin, including from third-party distributors. *See Trilegiant*, 828 F. Supp. 2d at 1363 (denying transfer of actions alleging "the same basic scheme" where "the differences among the actions will reduce any efficiencies to be gained from centralization"). Nowhere in their respective Complaints do these disparate medical providers allege that they purchased Herceptin through the same distributor,

---

[9] If discovery proceeds in these actions, it will require the individualized inquiries described here. However, Plaintiffs' claims suffer from sever legal deficiencies, and to address these, on February 16, 2016, Genentech filed a Motion to Dismiss the Second Amended Complaint. In describing the nature of discovery here, Genentech does not waive its more fundamental position that no discovery is required because the actions should be dismissed for failure to state a claim.

pursuant to the same sales contract, and/or subject to the same terms and conditions.[10]  *See In re Ocala Funding, LLC, Commercial Litig.*, 867 F. Supp. 2d 1332 (J.P.M.L. 2012) (denying transfer where "[i]ndividualized issues concerning each party's rights and duties under separate sets of contracts, and with different contracting parties, appear to predominate").

Even the supposedly "common" questions of fact cited in Plaintiffs' Motion will require plaintiff-specific discovery.  For example, Plaintiffs point to "the extent to which Genentech benefitted financially from the Herceptin shortage."  Pls.' Br. at 5.  Taking this allegation as true (it is not), determining how much Genentech was unjustly enriched will require individualized inquiries into each Plaintiff's Herceptin purchase history, including from whom they purchased, how much, and at what cost.  This discovery will vary for each Plaintiff.  Plaintiffs also acknowledge that at least some participated in "rebate programs."  *See, e.g.*, Exs. 4 ¶ 22, 5 ¶ 22; 6 ¶ 22, 7 ¶ 22 to Pls.' Mot. for Transfer.  The Panel routinely declines to centralize when plaintiff-specific issues will constitute the bulk of discovery.  *See In re Wireless Lifestyle Inc.*, 842 F. Supp. 2d 1382, 1383 (J.P.M.L. 2012); *In re Tyson Foods, Inc. Meat Processing Facilities FLSA Litig.*, 581 F. Supp. 2d 1374, 1375 (J.P.M.L. 2008).[11]

### 2.      Any Common Questions of Fact Are Not Sufficiently Complex or Numerous to Warrant Centralization.

Centralization is further unwarranted because any common questions of fact are not sufficiently complex or numerous to necessitate MDL treatment.      *See In re*

---

[10]   During the limited discovery that occurred prior to Judge Kern's Order reversing his denial of Genentech's motion to dismiss for lack of personal jurisdiction, several Plaintiffs responded to discovery requests and identified different distributors from whom they purchased their Herceptin, confirming that such fact questions will vary among Plaintiffs.

[11]   *See In re Ambulatory Pain Pump-Chondrolysis Prods. Liab. Litig.*, 709 F. Supp. 2d 1375, 1377 (J.P.M.L. 2010); *In re Blair Corp. Chenille Robe Prods. Liab. Litig.*, 703 F. Supp. 2d 1379, 1380 (J.P.M.L. 2010) (denying transfer where "the litigation will focus to a large extent on individual issues of fact concerning the circumstances of each consumer's injuries"); *In re Repetitive Stress Injury Prods. Liab. Litig.*, MDL No. 955, 1992 WL 403023, at *1 (J.P.M.L. Nov. 27, 1992).

*Reglan/Metoclopramide Prods. Liab. Litig.*, 622 F. Supp. 2d 1380, 1381 (J.P.M.L. 2009) (concluding centralization of eleven actions that shared factual issues was inappropriate); *In re Nutella Mktg. & Sales Pracs. Litig.*, 804 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011) (declining to transfer cases regarding marketing practices of single defendant where common factual questions were not "sufficiently complex or numerous"); *In re Blair Corp.*, 703 F. Supp. 2d at 1380 (J.P.M.L. 2010) (refusing to centralize where actions were "relatively straightforward"); *In re Medicare Fee Schedule Locality Litig.*, 560 F. Supp. 2d 1344, 1345 (J.P.M.L. 2008).

These actions differ from the product liability cases involving prescription medications and pharmaceutical defendants that more frequently come before the Panel.  These actions do ***not*** involve any claims for personal injury or defective design.  Plaintiffs do not allege that Herceptin caused them or their patients any physical, mental, or emotional harm.  Plaintiffs also do not contend that Herceptin was ineffective.  Instead, Plaintiffs assert that they (allegedly) cannot extract every drop from each vial to obtain the amount that they claim should be present.

The actions simply do not raise common questions of fact so complex that specialized MDL treatment is necessary.  S*ee In re Nutella*, 804 F. Supp. 2d at 1375.  At their core, they involve breach of warranty and unjust enrichment claims arising from the alleged use of only one medication, Herceptin, brought against only one defendant, Genentech.  Similar consumer products-related claims are handled routinely by every district court in the country.  And any common questions of fact among the lawsuits—relating, for example, to Genentech's development of Herceptin and its FDA regulatory history—will be addressed through discovery of only Genentech's documents and witnesses, as the lone defendant.  Discovery over the few common questions of fact that may arise will not be aided by transfer.  *See supra* Part III.A.3.

\*      \*      \*

14

For all the reasons discussed, the small number of parties have "every ability to cooperate and minimize the possibilities of duplicative discovery and/or inconsistent pretrial rulings," *In re General Mills*, 716 F. Supp. 2d at 1372, the majority of discovery will depend on plaintiff-specific inquiries, and the relatively few common issues are not sufficiently complex or numerous.   Accordingly, centralization would only impose an unnecessary layer of administration and a burden on an MDL court, without improving the conduct of these actions, and Plaintiffs' Motion should be denied.

C.     **If Transfer Is Ordered, Genentech Strongly Opposes the Northern District of Oklahoma Because It Is Not an Appropriate Forum.**

If the Panel nonetheless decides to centralize these actions, then Genentech strongly objects to transfer to the Northern District of Oklahoma.  Plaintiffs cite four reasons for locating an MDL in this District.  None are convincing.

1.     **Plaintiffs Misconstrue the Status of the Oklahoma Action.**

Plaintiffs rely heavily on the fact that the first action was filed in the Northern District of Oklahoma and supposedly "has proceeded the furthest to date."   Pls.' Br. at 6.   This characterization is misleading.  ***First***, the only reason that some limited discovery has occurred there is because Plaintiffs' counsel improperly joined all Plaintiffs in their original action, even though that court lacked personal jurisdiction over eight of the twelve Plaintiffs.  After Judge Kern initially denied Genentech's motion to dismiss for lack of personal jurisdiction, Genentech began serving and responding to written discovery requests in good faith.  However, as described above, Judge Kern ultimately granted Genentech's Motion for Reconsideration, reversed and vacated his original Order, and dismissed the non-resident Plaintiffs. *See supra* Part II.B.  Had Judge Kern dismissed these Plaintiffs in the first instance, discovery in Oklahoma would not have proceeded with the course and timing that it did.  Also, the eight actions re-filed elsewhere

would have begun discovery months ago in their home districts had they been correctly filed. Plaintiffs should not receive an MDL based on their failure to file in a suitable jurisdiction.

*Second*, Plaintiffs overstate the significance of developments in the Oklahoma action, where discovery remains in its earliest stages.  No party has produced any documents to date. The parties have not finalized a protective order.  There is no discovery schedule in place.[12]  Not all Plaintiffs have served or responded to written discovery requests.  Moreover, centralizing these actions would have little, if any, impact on the discovery process, aside from potentially delaying it, since both sides have common counsel already working together effectively.

*Third*, Judge Kern and Magistrate Judge Wilson have no more knowledge of the underlying merits of these actions than any other jurists.  *See* Pls.' Br. at 7.  Even Plaintiffs concede that the only motions Judge Kern has considered involved "jurisdictional issues and motions for leave to add parties."  *Id.*  Judge Kern has not had occasion to delve into the underlying legal or factual merits.  While Genentech—pursuant to the pleading deadlines imposed under the Federal Rules—recently filed a motion to dismiss, briefing is still ongoing and no timetable for a ruling has been established.  Likewise, Magistrate Judge Wilson has not decided any discovery motions that would provide him unique familiarity with these cases.

*Fourth*, Plaintiffs should not be permitted to invoke the Oklahoma action as grounds for locating an MDL there when they studiously have failed to prosecute any cases outside of Oklahoma.  Almost a month has passed since they filed their non-Oklahoma complaints, yet Plaintiffs have avoided serving Genentech.  By contrast, Plaintiffs filed and served their Motion for Transfer before this Panel *within 72 hours* of filing the non-Oklahoma complaints.

---

[12]   The parties only recently submitted proposals to the Court for a discovery schedule in their Joint Status Report, filed February 11, 2016.

**2.     The Northern District of Oklahoma Is Not a Convenient Forum.**

Even if transfer were appropriate (it is not), the Northern District of Oklahoma is not a convenient forum for defendant Genentech or a majority of the parties' witnesses.  ***First***, a substantial majority of the parties are located far from Oklahoma.  Nine of the twelve Plaintiffs reside outside Oklahoma.  Genentech is located more than 1,700 miles away in South San Francisco, California, and its lead counsel is located in San Francisco, California.

***Second***, the Panel frequently transfers actions to where a significant amount of the relevant witnesses and documents will be located.  *See, e.g., In re Vonage Mktg. and Sales Pracs. Litig.*, 505 F. Supp. 2d 1375, 1377 (J.P.M.L. 2007).  Here, none of Genentech's documents or witnesses are in Oklahoma.  The vast majority of plaintiffs' staff and facilities, which will be critical to individual discovery, are outside of Oklahoma.[13]  Accordingly, the Northern District of Oklahoma is not a convenient forum for the parties and their witnesses.

***Third***, the Northern District of Oklahoma is not readily accessible.  If transferred there, Plaintiffs' counsel would be litigating down the street from their offices, but almost every other party and their witnesses would be required to travel to Tulsa, Oklahoma.  Tulsa offers limited flight options.  For instance, there are no direct, non-stop flights between any of Genentech's home airports, San Francisco International ("SFO"), Oakland or San Jose airports—three major airports—and Tulsa.[14]  Similarly, there are no non-stop flights between Tulsa and several of Plaintiffs' local airports, including Ft. Myers, FL, Syracuse, NY, and Austin, TX.[15]

---

[13]  For example, five of the current plaintiffs served Initial Disclosures before being dismissed for lack of personal jurisdiction.  Those non-Oklahoma plaintiffs identified nearly 200 employees that are likely to have discoverable information supporting their claims, all or nearly all of whom will be located in various states other than Oklahoma.  *See* Ex. C.
[14]  *See* www.google.com/flights (last accessed Feb. 21, 2016).
[15]  *Id.*

### 3.    The Northern District of Oklahoma Lacks MDL Experience.

Plaintiffs argue that the Northern District of Oklahoma is "under-utilized" and should be assigned an MDL, but Plaintiffs omit critical facts.  For instance, Plaintiffs fail to mention that the District has minimal prior MDL experience.  Only one sitting judge in the District appears to have presided over an MDL, and the District has only hosted five MDLs in its entire history.[16]

In transferring actions to particular judges, the Panel regularly cites the judge's past experience with MDLs in support of assignment.  *See, e.g.*, *In re: Disposable Contact Lens Antitrust Litig.*, 109 F. Supp. 3d 1369, 1371 (J.P.M.L. 2015); *In re Vonage*, 505 F. Supp. 2d at 1377.  Here, Plaintiffs' proposed MDL judge—Judge Kern—is a senior status judge who has never presided over an MDL.  While Judge Kern is certainly a capable and respected jurist, he does not possess any distinct experience or expertise with Section 1407 that would support transfer.  Judge Kern already rejected (correctly) Plaintiffs' first attempt to consolidate these claims before him by dismissing them.[17]

### D.    If Transfer Is Ordered, the Most Appropriate Forum Would Be the Northern District of California.

For all of the above reasons, Genentech strongly opposes centralization of these actions. However, if the Panel concludes that transfer is required, Genentech respectfully submits that the Northern District of California is the most appropriate forum.  As set forth above, Genentech is headquartered there, and most of the witnesses and documents relating to the clinical development, regulatory history, and sales and marketing of Herceptin are located within the

---

[16]  J.P.M.L., MDL Statistics Report – Multidistrict Litigation Terminated Through September 30, 2015, *available at* http://www.jpml.uscourts.gov/sites/jpml/files/JPML_Cumulative_Terminated_Litigations-FY-2015.pdf (attached as Ex. D).

[17]   Transfer to the Northern District of Oklahoma is further inappropriate because defendant Genentech opposes it.  *See In re Ocala Funding, LLC, Commercial Litig.*, 867 F. Supp. 2d 1332 (J.P.M.L. 2012).

District.  Expert witnesses, other parties, and counsel also would find it easier to access since it is serviced by all three airports in the Bay Area—San Francisco, Oakland, and San Jose.

The Panel frequently considers these criteria decisive.  *See, e.g.*, *In re: Google Inc. Street View Elec. Commc'ns Litig.*, 733 F. Supp. 2d 1381, 1382 (J.P.M.L. 2010) (centralizing actions in Northern District of California where "[t]he sole defendant, Google, is headquartered there, and most relevant documents and witnesses are likely located there"); *In re Apple iPod Nano Prods. Liab. Litig.*, 429 F. Supp. 2d 1366, 1368 (J.P.M.L. 2006).[18]  While no constituent action is currently pending in the District, the Panel regularly transfers actions for other reasons, including the location of a substantial number of witnesses and documents, despite no pending actions in that forum.  *See, e.g.*, *In re Health Mgmt. Assos., Inc. Qui Tam Litig. (No. II)*, 11 F. Supp. 3d 1346, 1348 n.6 (J.P.M.L. 2014).  For example, in *In re Sundstrand Data Control, Inc. Patent Litigation*, 443 F. Supp. 1019 (J.P.M.L. 1978), the Panel ordered the transfer of five actions pending in four districts to the Western District of Washington from the District of Northern Oklahoma and various eastern locations, despite (i) the fact that no action was pending in Washington; (ii) pretrial activities were "slightly ahead" elsewhere; (iii) opponents had argued that the District had a "much heavier" caseload, and (iv) more actions were pending in Oklahoma than anywhere else.  The Panel explained that transfer to Washington was nevertheless appropriate because, *inter alia*, the party's principal place of business and thus "most of the documents and witnesses" involving common questions were located in Washington state.

The Northern District of California has the expertise and resources to resolve these actions efficiently.  The District's judges and court staff have extensive experience overseeing

---

[18]   Any argument that Genentech somehow seeks a "home court advantage" in the Northern District of California fundamentally misunderstands the relevant transfer factors and the Panel's settled law.  The Panel often holds that a defendant's presence in a district favors transfer there. That Genentech and its documents and witnesses are located in the District is a factor supporting transfer there, not one undermining it.  *See In re: Disposable Contacts*, 109 F. Supp. 3d at 1369.

multidistrict litigation.[19]  The District's judicial bench is very deep, with 15 active judges and 7 senior status judges, many of whom continue to maintain active dockets, including MDLs.  The District has no current judicial vacancies.  While Plaintiffs cite certain docket statistics, such metrics favor California or, at most, are neutral.[20]  In sum, Genentech strongly believes that transfer would not be just, efficient, or convenient, but if the Panel decides otherwise, the Northern District of California faithfully satisfies all statutory requirements of Section 1407.

## IV.  CONCLUSION

For the foregoing reasons, Genentech respectfully requests that the Panel issue an Order denying Plaintiffs' Motion for Transfer.  However, if the Panel deems transfer necessary, Genentech respectfully requests an Order transferring to the Northern District of California.

Dated: February 29, 2016                        Respectfully submitted,

                                                  _/s/ Alicia J. Donahue_____
                                                  Alicia J. Donahue
                                                  G. Gregg Webb
                                                  **SHOOK, HARDY & BACON L.L.P.**
                                                  One Montgomery, Suite 2700
                                                  San Francisco, CA  94104
                                                  Telephone: (415) 544-1900
                                                  Facsimile:  (415) 391-0281
                                                  adonahue@shb.com
                                                  gwebb@shb.com

                                                  *Attorneys for Defendant Genentech, Inc.*

---

[19]  *See* Ex. D; *see also* J.P.M.L., MDL Statistics Report – Distribution of Pending MDL Dockets by District (Feb. 16, 2016), *available at* http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-February-16-2016.pdf (attached as Ex. E).

[20]  For instance, the most recent data available reflects that the median time from filing to disposition for civil actions is substantially better in the Northern District of California than in the Northern District of Oklahoma, 7.8 months versus 10.7 months.  *See* U.S. District Courts - Combined Civil and Criminal Federal Court Management Statistics (June 30, 2015), *available at* http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/06/30-3 (attached as Ex. F).  Also, filings in the Northern District of California have decreased significantly in each of the past four years; whereas, they have been increasing in Oklahoma over the past three years.  *Id.*  Of the 18 pending MDLs before the Northern District of California, 13 have thirty or fewer cases still pending as of February 16, 2016.  *See* Ex. E.